IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| L.C., a minor, EVA CLARKE, and | : | 1:09-cv-2076 |
| JAMES CLARKE, individually and as | : | |
| natural guardians of L.C., | : | |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| CENTRAL PENNSYLVANIA YOUTH | : | |
| BALLET, ANNA MARIE | : | |
| RABASSI-DAVIS, KARL MOLL, | : | |
| MARY MOLL, and KIRK MOLL, | : | Hon. John E. Jones III |
| | : | |
| Defendants. | : | |

## MEMORANDUM AND ORDER

### July 2, 2010

Pending before the Court are three motions in the above-captioned case.

The first is a Motion to Dismiss the Amended Complaint, or, in the alternative, a

Motion to Strike filed by Defendants Mary and Kirk Moll ("the Molls"). (Doc. 22)

(the "Moll MTD").  The second is a Motion to Dismiss the Amended Complaint

filed by Defendants Central Pennsylvania Youth Ballet ("CPYB") and Anna Marie

Rabassi-Davis ("Rabassi-Davis") (collectively, "the Ballet Defendants"). (Doc. 25)

(the "Ballet MTD").  The third is a Motion to Strike filed by Defendant Karl Moll.

(Doc. 27) (the "Motion to Strike").  For the following reasons, we shall grant in

part and deny in part the Moll MTD and the Ballet MTD, and we shall grant the

Motion to Strike in its entirety.

## I.   PROCEDURAL HISTORY

Plaintiffs L.C., Eva Clarke, and James Clarke ("Plaintiffs" or "the Clarkes")

initiated the above-captioned action by filing a complaint on October 26, 2009.

(Doc. 1).  On February 2, 2010, Plaintiffs filed an amended complaint. (Doc. 21).

On that same date, the Moll MTD was filed. (Doc. 22).  On February 5, 2010, both

the Ballet MTD and the Motion to Strike were filed. (Docs. 25, 27).  Both briefs in

support of and brief in opposition to these motions have been filed. (*See* Docs. 23,

26, 28, 30, 31, 32).  While reply briefs have not been filed in connection with any

of the aforementioned motions, the time in which to do so has long since expired.

Accordingly, the motions are ripe for disposition.

## II.   STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept

all factual allegations as true, construe the complaint in the light most favorable to

the plaintiff, and determine whether, under any reasonable reading of the

complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*,

515 F.3d 224, 231 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings, Ltd.*, 292

F.3d 361, 374 n.7 (3d Cir. 2002)).  In resolving a motion to dismiss pursuant to

Rule 12(b)(6), a court generally should consider only the allegations in the complaint, as well as "documents that are attached to or submitted with the complaint, . . . and any matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a).  Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint attacked by a Rule 12(b)(6) motion to dismiss need not contain detailed factual allegations, it must contain "sufficient factual matter, accepted as true, to 'state claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ---, ---, 129 S. Ct. 1937, 1949 (2009).  To survive a motion to dismiss, a civil plaintiff must allege facts that 'raise a right to relief above the speculative level . . . ." *Victaulic Co. v. Tieman*, 499 F.3d 227, 235 (3d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  Accordingly, to satisfy the plausibility standard, the complaint must indicate

that defendant's liability is more than "a sheer possibility." *Iqbal*, 120 S.Ct. At
1949.  "Where a complaint pleads facts that are 'merely consistent with' a
defendant's liability, it 'stops short of the line between possibility and plausibility
of entitlement to relief.'" *Id.* (quoting *Twombly*, 550 U.S. at 557).

Under the two-pronged approach articulated in *Twombly* and later
formalized in *Iqbal*, a district court must first identify all factual allegations that
constitute nothing more than "legal conclusions" or "naked assertions." *Twombly*,
550 U.S. at 555, 557.  Such allegations are "not entitled to the assumption of truth"
and must be disregarded for purposes of resolving a 12(b)(6) motion to dismiss.
*Iqbal*, 129 S.Ct. at 1950.  Next, the district court must identify "the 'nub' of the . . .
complaint – the well-pleaded, nonconclusory factual allegation[s]." *Id.*  Taking
these allegations as true, the district judge must then determine whether the
complaint states a plausible claim for relief.  *See id.*

However, "a complaint may not be dismissed merely because it appears
unlikely that the plaintiff can prove those facts or will ultimately prevail on the
merits." *Phillips*, 515 F.3d at 231 (citing *Twombly*, 127 S.Ct. 1964-65, 1969 n.8).
Rule 8 "does not impose a probability requirement at the pleading stage, but
instead simply calls for enough facts to raise a reasonable expectation that
discovery will reveal evidence of the necessary element." *Id.* at 234.

4

## III.   FACTUAL BACKGROUND[1]

At all relevant times, L.C. and Karl Moll were students at CPYB.  (Amend.

Compl. ¶¶ 2, 6). On December 8, 2007, Karl Moll allegedly sexually assaulted L.C.

during a ballet rehearsal at the Whitaker Center in Harrisburg, Pennsylvania. (*Id.* ¶

20).  Plaintiffs allege that as a result of this conduct Karl Moll entered a consent

decree in Cumberland County Juvenile Court to criminal indecent assault and

aggravated indecent assault. (*Id.* ¶ 21).  On or about December 9, 2007, Eva

Clarke, mother of L.C., allegedly reported the sexual assault to Rabassi-Davis, a

faculty member and backstage manager employed by CPYB. (*Id.* ¶ 22).  Plaintiffs

allege that on December 12, 2007 Rabassi-Davis, with the consent of CPYB,

proceeded to tape record an interview with L.C. concerning the aforementioned

sexual assault without his parents' knowledge. (*Id.* ¶ 23, 24).  On that same day,

Rabassi-Davis purportedly disclosed the contents of the recording to Kirk Moll and

others without the consent of L.C. or his parents. (*Id.* ¶ 25).[2]

On December 14, 2007, Plaintiffs allege that CPYB failed to prevent Karl

Moll from entering the same dressing room as L.C. (*Id.* ¶ 27).  Plaintiffs aver that

---

[1] Since we must construe the pleadings in the light most favorable to the non-moving party, the factual recitation contained hereinafter is taken from the Plaintiffs' amended complaint.

[2] Indeed, Plaintiffs contend that Rabassi-Davis made the recording with the express intent of disclosing it to Kirk Moll. (Amend. Compl. ¶ 23).

on December 17, 2007, L.C. was again interviewed and tape recorded. (*Id.* ¶¶ 29,

30).[3] During this interview, L.C. was allegedly informed that he should not have

notified his parents about the alleged sexual assault. (*Id.* ¶ 32).   Plaintiffs believe

that this recording was also played for others. (*Id.* ¶ 34).

These allegations form the basis of Plaintiffs' 14-count amended complaint.

The claims asserted against Rabassi-Davis and CPYB collectively include: (i)

Count I– intentional interception of the oral communication of December 12, 2007,

in violation of 18 U.S.C. § 2511; (ii) Count II– intentional interception of the oral

communication of December 17, 2007, in violation of 18 U.S.C. § 2511; (iii)

Count III– intentional disclosure of the oral communication of December 12, 2007,

in violation of 18 U.S.C. § 2511; (iv) Count IV– intentional disclosure of the oral

communication of December 17, 2007, in violation of 18 U.S.C. § 2511; (v) Count

V– intentional interception of the oral communication of December 12, 2007, in

violation of 18 Pa.C.S. § 5703; (vi) Count VI– intentional interception of the oral

communication of December 17, 2007, in violation of 18 Pa.C.S. § 5703; (vii)

Count VII–  intentional disclosure of the oral communication of December 12,

---

[3] Plaintiffs note that the Clarkes gave permission for their son to be interviewed. However, they did so under the conditions that it would be a 5 minute interview regarding Karl Moll's suspected drug activity. (*Id.* ¶ 30).  Plaintiffs contend that L.C. was actually taped for 45 minutes and the subject of the interview was the aforementioned sexual assault. (*Id.* ¶ 31).  The Clarkes assert that they would not have allowed their son to be interviewed had they known that the sexual assault would be a topic of discussion. (*Id.* ¶ 33).

2007, in violation of 18 Pa.C.S. § 5703; (viii) Count VIII– intentional disclosure of

the oral communication of December 17, 2007, in violation of 18 Pa.C.S. § 5703;

and (ix) Count XII– civil conspiracy to illegally tape record and publish the

communications of December 12 and 17, 2007. (*See* Amend. Compl. ¶¶ 39-60, 79-

80).[4]   Counts XI (negligence in supervising student behavior) and XIII (breach of

contract)[5] are lodged against CPYB alone. (*Id.* ¶¶ 72-78, 81-87).[6]

    The counts asserted against Karl Moll include: (i) Count IX– assault and

battery in connection with the aforementioned sexual assault; and (ii) Count XIV–

negligence/gross negligence in connection with the aforementioned sexual assault.

(*Id.* ¶¶ 61-63, 88-94).   Plaintiffs have asserted Count X (common law negligence)[7]

---

[4] Plaintiffs request, *inter alia*, punitive damages and attorneys fees related to these claims. (*See generally id.* Counts I-VIII).

[5] The breach of contract claim is based upon the terms of the CPYB Handbook, which states, in pertinent part: "Students are expected to behave respectfully and courteously at all times toward CPYB faculty and staff, as well as to each other." (*Id.* ¶ 38).  Plaintiffs assert that since they had to sign a document evidencing that they read and understood the contents of the Handbook, the terms thereof either expressly or impliedly became part of the contract between the parties. (*Id.* ¶ 83). Additionally, Plaintiffs allege that CPYB breached its duty to protect its students from harm. (*Id.* ¶¶ 84-85).

[6] Plaintiffs seek, *inter alia*, punitive damages in connection with Count XI, and attorney's fees with respect to both Counts XI and XIII. (*See id.* Counts XI, XIII).

[7] This claim is based upon Plaintiffs' contention that the Molls knew that their son required medication for mental health issues and that he had a propensity to assault other children. (*Id.* ¶¶ 65-66).  In spite of this knowledge, Plaintiffs allege that the Molls failed to have medication available for their son and failed to supervise their son's medication regimen when medication was provided. (*Id.* 67).  According to Plaintiffs, this conduct breached the duty the Molls had to medicate their son so that he would not harm others. (*Id.* ¶¶ 68-71).

and Count XII (conspiracy to illegally tape record and publish the communications

of December 12 and 17, 2007)[8] against his parents. (*Id.* ¶¶ 64-71, 79-80).[9]

The afore-referenced allegations are the subjects of the Moll MTD, the

Ballet MTD, and the Motion to Strike, which we shall address in turn.

## IV.   DISCUSSION

### A.   The Ballet MTD

The Ballet MTD seeks the following relief: (i) dismissal of the federal

wiretapping claims in Counts I-IV; (ii) dismissal of the punitive damage prayer

contained in Count XI; (iii) dismissal of the prayer for attorney's fees; and (iv)

dismissal of the breach of contract claim in Count XIII.  We shall discuss these

subjects *seriatim*.

#### i.   Federal Wiretapping Claims (Counts I-IV)

The federal wiretapping statute applies to anyone who "intentionally

intercepts, endeavors to intercept, or procures any other person to intercept or

---

[8] While the amended complaint does not *expressly* implicate Mary Moll in the conspiracy, it does so *impliedly*.  Indeed, while the amended complaint explicitly states that "Rabassi-Davis, Kirk Moll, and others" were the conspirators, (*id.* ¶ 80), it also seeks to hold "Rabassi-Davis, CPYB, Kirk Moll, and Mary Moll jointly and severally [liable]" for the purported conspiracy.  Accordingly, reading the amended complaint liberally, as we must, we conclude that the reference to "other" conspirators implicates Mary Moll in the alleged conspiracy. Accordingly, we believe that Plaintiffs have sufficiently alleged that Mary Moll was a co-conspirator for purposes of Count XII.

[9] Plaintiffs request, *inter alia*, punitive damages and attorneys fees related to these claims. (*See generally* Amend. Compl. Counts X, XII).

endeavor to intercept, any wire, oral, or electronic communication . . . ." 18 U.S.C.

§ 2511(1)(a).  Further, the statute also applies to anyone who " intentionally

discloses, or endeavors to disclose, to any other person the contents of any wire,

oral, or electronic communication, knowing or having reason to know that the

information was obtained through the interception of a wire, oral, or electronic

communication in violation of this subsection." *Id.* § 2511(1)(c).[10]  However, the

statute also provides that

> . . . it shall not be unlawful under this chapter for a person not acting
> under color of law to intercept a wire, oral, or electronic communication
> where such person is a party to the communication or where one of the
> parties to the communication has given prior consent to such interception
> *unless* such communication is intercepted for the purpose of committing
> any criminal or tortious act in violation of the Constitution or laws of the
> United States or of any State.

*Id.* § 2511(2)(d) (emphasis added).  The Ballet Defendants contend that they

cannot be held liable under the federal wiretapping statute because they are a non-

governmental actor that was a party to the recorded communication and gave

consent to the interception of the same.  We disagree.

Ballet Defendants' argument ignores the qualification contained in the

language of § 2511(2)(d).  That provision clearly states that if one of the

---

[10] While the proscriptions contained in 18 U.S.C. § 2511 are criminal in nature, 18 U.S.C.
§ 2520 grants private individuals a civil cause of action based on violations of, *inter alia*, § 2511.
*See* 18 U.S.C. § 2520.

communicants consents to interception of the communication, such conduct is not

prohibited *unless* the interception was "for the purpose of committing any criminal

or tortious act in violation of the constitution or laws of the United States or of any

state." *Id.*  In the case at bar, Plaintiffs have clearly averred that the interception of

the communications on December 12 and 17, 2007, was executed with the express

purpose of disclosing the contents of the communication to Defendant Kirk Moll

and others. (*See* Amend. Compl. ¶¶ 41, 44).  Since such disclosure is proscribed by

§ 2511(1)(c), the interception of the aforementioned communications was done for

the purpose of committing an act in violation of federal law.  Accordingly, the

language contained in § 2511(2)(d) does not remove Ballet Defendants' conduct

from the realm of illegality, meaning that Plaintiffs may properly maintain a civil

cause of action against them pursuant to § 2520.  Consequently, we shall deny the

Ballet MTD to this extent.

### ii.    Prayer for Punitive Damages (Count XI)

It is well-established that a showing of mere negligence, or even gross

negligence, is not sufficient to imposed punitive damages; rather, a plaintiff must

show that the defendant's acts amounted to intentional, willful, wanton, or reckless

conduct in order to warrant the imposition of punitive damages. *See Doe v.*

*Wyoming Valley Health Care Sys.*, 987 A.2d 758, 768-69 (Pa. Super. Ct. 2009).

10

With this in mind, we note that, as its heading suggests, Count XI contains a claim for ordinary negligence asserted against CPYB. Moreover, we are not aware of any allegation in the amended complaint indicating that CPYB was intentional, willful, wanton, or reckless in supervising its students in the allegedly insufficient manner in which it did. Accordingly, we do not believe that Plaintiffs have sufficiently lodged allegations that would entitle them to punitive damages in connection with Count XI. *See Twombly*, 550 U.S. at 555 (citations omitted) (permitting dismissal of a complaint that does not contain a short and plain statement of the claim showing that the pleader is entitled to the requested relief). Consequently, we shall grant the Ballet MTD to this extent.

### iii.    Prayer for Attorney's Fees

In their opposition brief, Plaintiffs concede the issue of attorney's fees. (Br. Opp., Doc. 30, p. 6). In light of this concession, we shall grant the Ballet MTD to this extent.

### iv.    Breach of Contract Claim (Count XIII)

As aforestated, Plaintiffs' breach of contract claim is premised upon the provisions of the CPYB Handbook, which states, in pertinent part: "Students are expected to behave respectfully and courteously at all times toward CPYB faculty and staff, as well as to each other." (Amend. Compl. ¶ 38). Plaintiffs assert that

11

since they were required to sign a document evidencing that they read and understood the contents of the Handbook, the terms thereof either expressly or impliedly became part of the contract between the parties, and that CPYB breached those terms by allowing Karl Moll to sexually assault L.C. (*Id.* ¶ 83).  Further, Plaintiffs assert that CPYB breached its duty to protect its students from harm. (*Id.* ¶¶ 84-85).

Initially, we note that the "fundamental rule in interpreting the meaning of a contract is to ascertain and give effect to the intent of the contracting parties." *Robertson v. Drexel Univ.*, 991 A.2d 315, 318 (Pa. Super. Ct. 2010) (citations omitted). "The intent of the parties to a written agreement is to be regarded as being embodied in the writing itself." *Id.* (citations omitted).  "Courts do not assume that contract's language was chosen carelessly, nor do they assume that the parties were ignorant of the meaning of the language they employed." *Id.* (citations omitted).  In the case at bar, Plaintiffs assert that the Handbook provides the written terms and conditions upon which the contract was based. (Amend. Compl. ¶ 83).  However, even if this were true, a conclusion that we expressly do not reach, Plaintiffs have failed to allege that CPYB breached the terms of the purported agreement.  Indeed, the language of the provision quoted by Plaintiffs does not obligate CPYB to ensure that their students act respectfully towards

12

others, nor does it obligate it to ensure their students' safety. (*See* Amend. Compl. ¶ 38). In fact, the provision does not obligate CPYB to do *anything*; rather, it is merely a statement of expectation with regard to how its students will behave. (*See id.*). Accordingly, Plaintiffs have failed to adequately allege that they are entitled to relief on the basis of CPYB's alleged breach of the aforementioned provision.

Plaintiffs' breach of contract claim must also fail to the extent that it is based upon CPYB's alleged duty to ensure the safety of its students. Indeed, the amended complaint is completely bereft of any allegations that such a duty emanated from a written or oral agreement between the parties.[11] Therefore, we shall grant the Ballet MTD to this extent.

In summary, we shall grant the Ballet MTD insofar as it relates to Plaintiffs' punitive damage request in Count XI, their request for attorney's fees, and the breach of contract claim in Count XIII. We will deny the motion to the extent in relates to the federal wiretapping claims in Counts I-IV.

---

[11] At this juncture, we note that "school districts are charged with the responsibility of supervising children under their control during the time that they are at school under the doctrine of *in loco parentis* to protect children." *Westmoreland Intermediate Unit No. 7 v. Westmoreland Intermediate Unit No. 7 Classroom Assistants Educ. Support Personnel Assoc.*, 977 A.2d 1205, 1209 (Pa. Commw. Ct. 2009) (citations omitted). Accordingly, since L.C. was a student at CPYB, we believe that CPYB may have incurred a *fiduciary* duty to protect L.C. from harm. However, Plaintiffs have failed to lodge a claim for breach of *fiduciary* duty, electing instead to pursue a claim for breach of alleged *contractual* duty. As stated above, Plaintiffs have failed to adequately aver that CPYB was *contractually* obligated to ensure the welfare of its students. Accordingly, Plaintiffs have failed to state a claim upon which relief can be granted.

13

**B.     The Moll MTD**

The Moll MTD contains three arguments: (i) that Plaintiffs have failed to state a claim for negligence in Count X; (ii) that Plaintiffs have failed to state a civil conspiracy claim in Count XII; (iii) that, in the alternative to an outright dismissal of the above claims, paragraph 21 of the amended complaint should be stricken.  We address these arguments in turn.

**i.     Negligence Claim (Count X)**

The elements of a negligence cause of action include: "(i) a duty or obligation recognized by the law requiring a defendant to conform to a certain standard of conduct for the protection of others against unreasonable risk; (ii) defendant's failure to conform to the standard required; (iii) a causal connection between the conduct and the resulting injury; and (iv) actual loss or damage resulting to the plaintiff." *R.W. & C.W. v. Manzek*, 888 A.2d 740, 746 (Pa. 2005) (citations omitted).  The Molls assert that they had no legal duty to monitor their son's medication regimen; in other words, they contend that they had no legal duty to guarantee that their minor son was properly medicated. (Br. Supp., Doc. 23, pp. 7-8).  We disagree.

The Second Restatement of Torts provides:

> A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting itself as to create an unreasonable risk of bodily harm to them, if the parent (a) knows or has reason to know that he has the ability to control his child, and (b) knows or should know of the necessity and opportunity for exercising such control.

RESTATEMENT (SECOND) OF TORTS § 316.[12]  The principles expressed in this provision are consistent with Pennsylvania case law. *See K.H. v. J.R.*, 826 A.2d 863, 876 (Pa. 2003) (Newman, J., concurring) (citing *Condel v. Savo*, 29 A.2d 51 (Pa. 1944)); *see also J.H. ex rel Hoffman v. Pellak*, 764 A.2d 64 68, 69 (Pa. Super. 2000).  Plaintiffs have alleged that the Molls knew or should have known that their son had a propensity to assault other children and that he was prescribed medication to control a mental health condition. (Amend. Compl. ¶¶ 65, 66).  A liberal reading of the amended complaint reveals Plaintiffs' contention that the aforementioned medication was designed to control Karl Moll's assaultive behavior. (*See id.* ¶¶ 64-71).  It is beyond doubt that these allegations establish that the Molls knew of the necessity of monitoring their son's compliance with his prescribed medication regimen.  Further, it is reasonable to infer that the Molls had

---

[12] Pursuant to the Restatement, "[T]he duty of a parent to control the conduct of a child to those instances in which a parent has the ability to control the child, knows of its necessity, and has the opportunity to do so." *See K.H. v. J.R.*, 826 A.2d 863, 873 (Pa. 2003). Consequently, the duty is not all-encompassing and would not require parents to control the conduct of their children at all times and places.

the ability and opportunity to engage in such monitoring, since they lived in the same house as their minor son. (*Id.* ¶¶ 6-8).  Thus, we believe that the Molls had a duty to oversee their son's medication regimen pursuant to pursuant the dictates of the Restatement of Torts and Pennsylvania case law.[13]  Plaintiffs allege that this duty was breached, in that the Molls not only failed to monitor their son's medication regimen, but that they also failed to have medication available for him. (*Id.* ¶ 67).  Accordingly, we believe that Plaintiffs have adequately alleged a legally enforceable duty and a breach thereof in connection with the negligence action contained in Count X.  Since the Molls do not interpose any additional arguments indicating that the Plaintiffs' negligence claim is deficient, we shall deny the Moll MTD insofar as it is related to that claim.

At this juncture, we address the Molls' argument that they cannot be held liable for punitive damages in relation to the aforementioned negligence claim.  As stated above, a showing of mere negligence, or even gross negligence, is not sufficient to imposed punitive damages; rather, a plaintiff must show that the defendant's acts amounted to intentional, willful, wanton, or reckless conduct in

---

[13] Again, we note that this duty is limited to the extent that the Molls has a reasonable opportunity to exercise supervision of their son's medication regimen.  Accordingly, the contours of the duty imposed upon the Molls cannot be accurately defined before the conclusion of discovery.

16

order to warrant the imposition of punitive damages.  *See Wyoming Valley Health*, 987 A.2d at 768-69.  While Count X is cast as a negligence cause of action, it is based upon allegations that, despite knowing that their son needed medication to treat a mental illness that manifested itself in aggressive behavior, the Molls either failed to procure their son's medication or failed to supervise his ingestion of the same, or both.  We believe that these averments sufficiently amount to an allegation that the Molls' conduct was intentional, willful, wanton, or reckless.  Therefore, we shall deny the Moll MTD insofar as it relates to the punitive damage request contained in Count X.

Finally, we note that the Molls contend that they cannot be held liable for attorney's fees pursuant to Count X.  Since Plaintiffs concede this point, (Br. Opp., Doc. 31, p. 7), we shall grant the Moll MTD in this regard.

## ii.    Civil Conspiracy Claim (Count XII)

"The essential elements of a claim for civil conspiracy are as follows: (i) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (ii) an overt act done in pursuance of the common purpose, and (iii) actual legal damage." *Phillips v. Selig*, 959 A.2d 420, 437 (Pa. Super. Ct. 2008) (citations omitted). "Proof of malice, *i.e.,* an intent to injure, is an essential part of a

17

conspiracy cause of action; this unlawful intent must also be without justification."

*Gross v. Proctor & Gamble Paper Prods.*, 866 A.2d 437, 441 (Pa. Super. Ct.

2005).  The Molls argue that Count XII must be dismissed because it is entirely

bereft of particularized allegations indicating the number of individuals involved in

the conspiracy, the period of the conspiracy, the object of the conspiracy, and the

actions taken in furtherance of the conspiracy.

With regard to the time and duration arguments, we note that Plaintiffs *are*

*not* required to set forth a time and place for a conspiratorial meeting or a date

upon which the conspiracy began. *See Baker v. Rangos*, 324 A.2d 498 (Pa. Super

Ct. 1974).[14]  Further, a reading of the amended complaint indicates that Plaintiffs

have alleged that Rassabi-Davis and the Molls were participants in a conspiracy to

violate L.C.'s federal rights by tape recording Rassabi-Davis' interview of him and

disclosing the contents of the recording to Kirk Moll without his consent or that of

his parents. (Amend. Compl. Count XII).  These averments certainly establish that

Plaintiffs have in fact alleged identities of the co-conspirators and the object of the

------

[14] The Molls cite *Gross* and *Grigsby v. Kane*, 250 F.Supp.2d 453 (M.D. Pa. 2003), in
support of their claim that particularity in alleging time and place is required.  However, a review
of *Gross* indicates that it stands for the proposition that a complaint must identify an unlawful act
or lawful act carried out by unlawful means in order to maintain a civil conspiracy claim. As
stated below, Plaintiffs have complied with this requirement. Further, *Grigsby* is inapposite
because it did not address civil conspiracy claims under Pennsylvania law, but instead dealt with
conspiracy claims made pursuant to 42 U.S.C. §§ 1985 and 1986.

conspiracy.  Further, it is clear that Plaintiffs have also alleged the act in furtherance of the conspiracy, *i.e.*, the actual interception of the aforementioned interview and subsequent disclosure thereof to Kirk Moll. (See *id.*¶¶ 20-38).[15] Finally, Plaintiffs have claimed that the actual legal damage occasioned by the conspiracy is the purported violation of the rights secured to L.C. by federal and state wiretapping laws. (*See id.* ¶¶ 80).  Accordingly, we believe that the Plaintiffs have sufficiently pled a their claim for civil conspiracy.  We will therefore deny the Moll MTD to this extent.

Finally, the Molls argue that their conduct does not justify the imposition of punitive damages.  As aforestated, a plaintiff must show that the defendant's acts amounted to intentional, willful, wanton, or reckless conduct in order to warrant the imposition of punitive damages.  Since Plaintiffs have alleged that the conspiracy was designed to violate the rights guaranteed to L.C. by federal and state law, we believe that they have lodged allegations from which, if proven, a reasonable jury could infer that the Molls' conduct was "intentional, willful, wanton, or reckless." Consequently, we shall deny the Moll MTD to this extent and permit the Plaintiffs to proceed to discovery on this issue.

---

[15] Plaintiffs have also complied with the malice or intent requirement in that they have alleged that the purpose of intercepting L.C.'s communication was to disclose it to Kirk Moll and others in violation of L.C.'s federal and state rights. (Amend. Compl. ¶¶ 41, 44).

19

### iii.    Paragraph 21 of the Amended Complaint

Lastly, the Molls argue that paragraph 21 of the amended complaint must be stricken pursuant to Federal Rule of Civil Procedure 12(f), which permits the court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  The aforementioned paragraph contains Plaintiffs' allegation that Karl Moll entered into a consent decree in Cumberland County Juvenile Court as a result of the alleged sexual assault that forms the basis of the instant case. (*See* Amend. Compl. ¶ 21).

Pennsylvania courts have held that "[a] consent decree is not a legal determination by the court of the matters in controversy but rather is merely an agreement between the parties, that is, a contract binding them to the settlement's terms." *See Pennsylvania Higher Educ. Assistance Agency v. Lal*, 714 A.2d 1116, 1118 (Pa. Commw. Ct. 1998); *see also Weeast v. Borough of Wind Gap*, 621 A.2d 1074, 1076 (Pa. Commw. Ct. 1993); *Pennsylvania v. U.S. Steel Corp.*, 325 A.2d 324, 328 (Pa. Commw. Ct. 1974).[16]  Consequently, we believe that the consent decrees are akin to a plea of *nolo contendere* in that neither results in an *adjudication* of guilt. *See, e.g.*, *Commonwealth v. Smith*, 30 A.2d 339, 346 (Pa.

---

[16] Although the above-cited cases have addressed consent decrees in the civil context, we believe this statement is equally applicable to consent decrees occurring in criminal or juvenile court.

Super. Ct. 1943) (When a plea of *nolo contendere* "is tendered and accepted it is

not the province of the judge to adjudge the defendant guilty or not guilty.")

(citations and internal quotations omitted); *see also Lipisky v.Commonwealth*

*United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976) ("[B]oth consent decrees and pleas

of *nolo contendere* are not true adjudications of the underlying issues.")

(addressing consent decrees made pursuant to the Clayton Act, 15 U.S.C. §§12-

27).

It is well established that pleas of *nolo contendere* are inadmissible pursuant

to Federal Rule of Civil Procedure 410(2). *See* Fed. R. Civ. P. 410(2) ("Except as

otherwise provided in this rule, evidence of the following is not, in any civil or

criminal proceeding, admissible against the defendant who made the plea or was a

participant in the plea discussions: * * * (2) a plea of nolo contendere . . .).

Accordingly, we do not believe that evidence of Karl Moll's consent decree in

Cumberland County Juvenile Court would be admissible in the present action

pursuant to F.R.E. 410(2).

Further, even if F.R.E. 410(2) was inapplicable in this case because *nolo*

*contendere* pleas were not sufficiently analogous to consent decrees, the consent

decree at issue would not be admissible for the following reasons.  As aforestated,

consent decrees are not adjudications of guilt.  Therefore, the consent decree

entered into by Karl Moll cannot materially substantiate the claims Plaintiffs have asserted against him in the action at bar, meaning that it is entirely irrelevant to those claims. *See* Fed. R. Evid. 401 ("'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."); Fed. R. Evid. 402 (" . . . . Evidence which is not relevant is not admissible."). Consequently, and contrary to Plaintiffs' contention, the jury is not "entitled" to know about the consent decree because it is irrelevant and impertinent and therefore inadmissible pursuant to F.R.E. 401 and 402. Accordingly, we believe that the paragraph 21 of the amended complaint should be stricken therefrom pursuant to Federal Rule of Civil Procedure 12(f). We will grant the Moll MTD to this extent.

In summary, we shall deny the Moll MTD insofar as it seeks dismissal of Plaintiffs' negligence claim in Count X, their civil conspiracy claim in Count XII, and their request for punitive damages in connection with both of those claims. We grant the Moll MTD insofar as it seeks dismissal of Plaintiffs' request for attorney's fees in connection with Count X, and to the extent that it seeks to strike paragraph 21 from the amended complaint.

### C.    The Motion to Strike

22

The Motion to Strike seeks to strike paragraphs 21 and 63 from the amended complaint pursuant to Federal Rule of Civil Procedure 12(f).[17]  As discussed above, we have already determined that paragraph 21 should be stricken as immaterial and impertinent.  Since paragraph 63 contains an allegation identical to that in paragraph 21, we believe it should likewise be stricken for the aforestated reasons.  Accordingly, we shall grant the Motion to Strike in its entirety.

**NOW, THEREFORE IT IS HEREBY ORDERED THAT**:

1.  The Motion to Dismiss filed by Defendants CPYB and Rassabi-Davis (Doc. 25) is **GRANTED IN PART** and **DENIED IN PART** to the following extent:

    a.  The motion is **GRANTED** insofar is relates to Plaintiff's punitive damage request in Count XI, their breach of contract claim in Count XIII, and their request for attorney's fees.

    b.  The motion is **DENIED** to the extent it relates to the federal wiretapping claims in Counts I-IV.

2.  The Motion to Dismiss the Amended Complaint, or, in the alternative, Motion to Strike filed by Defendants Kirk and Mary Moll (Doc. 22) is

---

[17] Like paragraph 21, paragraph 63 also contains reference to the aforementioned consent decree entered into by Karl Moll in Cumberland County Juvenile Court.

**GRANTED IN PART** and **DENIED IN PART** to the following extent:

a.      The motion is **GRANTED** insofar as it relates to Plaintiffs' request for attorney's fees in connection with Count X, and their request to strike paragraph 21 from the amended complaint.

b.      The motion is **DENIED** insofar as it relates to Plaintiffs' negligence claim in Count X, their civil conspiracy claim in Count XII, and their request for punitive damages in connection with both of those claims.

3.      The Motion to Strike filed by Defendant Karl Moll (Doc. 27) is **GRANTED** in it entirety.  Paragraphs 21 and 63 are **STRICKEN** from the amended complaint.  The parties are forbidden from relying on the same throughout the pendency of the matter at bar.


                                            /s/ John E. Jones III
                                            John E. Jones III
                                            United Stated District Judge